## MURPHY v. UNITED STATES (MacLEAN et al., Interveners).

District Court, D. Massachusetts.
Jan. 12, 1934.

William H. Lewis and William F. Kane, both of Boston, Mass., for plaintiff.

Thomas Kelley, of Boston, Mass., for interveners.

William J. Hession, U. S. Attorney, of Boston, Mass., for the United States.

MORRIS, District Judge.

This is an action brought by Daniel Joseph Murphy of Boston, Suffolk county, commonwealth of Massachusetts, against the United States of America, to recover on a $5,000 converted war risk insurance policy.

The petition was entered February 13, 1932. Upon June 14, 1932, Agnes MacLean and Maria Connors Leonard filed a motion to be joined as parties defendant in the action. This motion was allowed by Judge Lowell, June 14, 1932, on the same day the motion was entered.

All the parties waived in writing the right to a trial by jury, and the case came on for hearing before the court.

I find the following facts: Joseph J. Murphy, the soldier, enlisted in the United States Army at Roxbury, Mass., March 29, 1918, and was honorably discharged at Camp Devens, April 17, 1919. On April 1, 1918, he made application for and was granted a certificate of war risk insurance in the sum of $10,000, naming as beneficiary therein his sister, Agnes Murphy. During the term of his service, the insurance premiums were paid out of his service pay as a soldier. After his discharge from the army, he allowed his policy to lapse for nonpayment of the premium due on March 1, 1919. The lapse of the policy became effective thirty-one days thereafter. On June 1, 1920, he reinstated and converted $5,000 of his term insurance to an ordinary life policy, and named his father, Daniel Joseph Murphy, the plaintiff in this action, as his designated beneficiary. This insurance was in force on the date of the veteran's death April 13, 1931. On April 8, 1931, Joseph J. Murphy signed a paper made out in due form purporting to change the beneficiary named in his life insurance policy naming therein three beneficiaries as follows: Maria Connors Leonard, an aunt, Agnes C. MacLean, his sister, and Daniel J. Murphy, his father, who were to share equally. This change of beneficiaries was made at the Boston City Hospital during Murphy's last illness.

The main issues in the trial of the case involved the validity of this change of beneficiaries. The United States admits liability under the policy, and takes the position of a stakeholder willing to pay when it is determined who is entitled to the proceeds of the policy.

The signed notice of the change of beneficiary was mailed to the United States Veterans' Bureau, Insurance Division, Washington, D. C., April 9, 1931, and bears the stamp of the Bureau as being received April 13, 1931.

The change of beneficiary was not indorsed on the policy for nearly a year thereafter, as appears by the following:

"Change of Beneficiary.

"In accordance with the request of the

insured the beneficiary herein is changed to Maria Connors Leonard, his aunt, one third (⅓), Agnes G. MacLean, his sister, one third, (⅓), Daniel Joseph Murphy, his father, one third, (⅓). (See Form 724 dated April 8, 1931.)

"Washington, D. C., March 10, 1932.

"Hortense Freeman, Registrar."

From a letter (Plaintiff's Exhibit 8) written by the Bureau to Daniel Joseph Murphy, May 4, 1931, it appears that, upon the death of his son, Murphy obtained blank proofs of claim from the Veterans' Bureau in Boston, filled them out, and filed them with the Bureau in Washington. Receipt of the same was acknowledged by the Bureau, and Murphy was informed that it had received a document dated April 8, 1931, purporting to be executed by Joseph J. Murphy containing a request for a change of beneficiary.

Whether or not Daniel J. Murphy knew of the change in beneficiary prior to the date of the above-mentioned letter seems to me immaterial. It cannot affect the veteran's right under the policy to make the change.

The plaintiff bases his claim to the full proceeds of the policy on two grounds. The first, that the insured was not of sane mind at the time he executed the application for a change in the policy, and that, being of weak mind, he was induced to make the change by undue influence of his sister and aunt. The second ground is that what was done was ineffectual as a matter of law to make a change of beneficiaries.

■ With reference to the first ground, I find that Joseph J. Murphy was taken ill April 6, 1931, and removed to the Boston City Hospital, where he died from lobar pneumonia the 13th day of April, 1931. I find that on April 8th he sent for his sister, Mrs. MacLean, to come to the hospital. When she arrived, he told her he wanted a lawyer. She made arrangement with her husband to communicate with a lawyer named Sullivan, who came to the hospital and had a talk with "Joe" to ascertain what he wanted. He explained to the lawyer that he wanted to make a will and have his property go three ways. Sullivan apparently had been told what was wanted, because he had secured the necessary blanks for making a change of the beneficiary in the policy. While Attorney Sullivan was at the hospital, Daniel J. Murphy, the father, came in, and, seeing papers in the hand of the attorney, inquired what was going on. Not receiving a satisfactory answer, a scene was created at the boy's bedside exciting him to such an extent that

Dr. Gallagher, physician in charge, advised that nothing more be done at that time. Later arrangements were made for Attorney Thomas J. Kelley to come to the hospital in the evening of the same day, and he arrived about 7:30. He was shown to the bedside by the boy's father. After talking with the boy, who told him how he wanted his property to go, the necessary papers were prepared, and a will was executed in which Daniel J. Murphy, the father, Mrs. MacLean, the sister, and Mrs. Leonard, the aunt, were made beneficiaries to share equally. An application for change of beneficiary in his life insurance policy naming the father, sister, and aunt as beneficiaries was made. At the same time a change of beneficiaries in his adjusted service certificate was made, naming the same three parties as beneficiaries therein.

While there is no doubt but that young Murphy was a very sick man at the time, I believe and find that he was in possession of all his faculties, sane, and capable of giving instructions as to the disposition of his property, and that there was no undue influence brought to bear upon him.

### Law.

■ Plaintiff's second ground of recovery appears to resolve itself into a pure question of law. He testified that, after his son's term insurance had expired for the nonpayment of premiums, he furnished money for it to be reinstated, and that he had paid the premiums on the life insurance policy since it was issued. There is conflicting testimony as to whether or not such was the fact. It is not necessary for me to make a finding one way or the other in order to determine plaintiff's rights in this case. Whether or not the father may prove a claim against his son's estate for money so expended is a question for the state court. An agreement not to change beneficiary in a war risk policy in consideration of money advanced to insured by beneficiary is invalid. Lewis v. United States et al. (C. C. A.) 56 F.(2d) 563.

Section 12 of the policy of insurance provides:

"The insured shall have the right at any time, and from time to time, and without the consent or knowledge of the beneficiary to change the beneficiary under this policy within the class permitted by the War Risk Insurance Act or any amendment or supplement thereto. Every change of beneficiary must be made by notice, signed by the insured, to the Bureau of War Risk Insurance at its office in Washington D. C. (Accompanied

by the policy for an indorsement of the change thereon by the said Bureau) and shall not take effect unless such change is indorsed on the policy. After such indorsement the change shall be deemed to have been made as of the date the insured signed said written notice of change whether the insured be living at the time of said indorsement or not."

Plaintiff's contention is that paragraph 12 of the contract in the policy determines and controls the method by which a change in the designation of the beneficiary may be made, and that, the rule laid down not having been complied with, the attempted change is invalid.

I cannot so hold. Counsel for the plaintiff cites the following cases: Abbott v. Supreme Colony United Order of Pilgrim Fathers, 190 Mass. 67, 76 N. E. 234; James McCarty v. Supreme Lodge N. E. Order of Protection, 153 Mass. 314, 26 N. E. 866, 11 L. R. A. 144, 25 Am. St. Rep. 637; Thomas v. Thomas, 60 Hun, 382, 15 N. Y. S. 15; Ables v. Ackley, 133 Mo. App. 594, 113 S. W. 698. These decisions do not seem to me convincing.

Section 12 was inserted in the policy for the protection of the United States. It protects the government against payment to any person not entitled under the terms of the policy. Daniel J. Murphy, the named beneficiary, had no vested interest in it. The only parties to the contract were Joseph J. Murphy and the United States of America. They were the only ones that could change the terms of the contract. The insured executed a prescribed form for a change of beneficiary which was promptly filed with the Bureau in Washington. It is true that it was not accompanied by the policy for an indorsement of the change thereon by said Bureau, but shortly thereafter the policy was sent in by the plaintiff in this action, and the Bureau was in possession of the veteran's request and the policy. It is true that the policy was not filed by Daniel J. Murphy for the purpose of having the change of beneficiary recorded thereon, but was accompanied by a formal claim for insurance benefits under the policy. The Bureau promptly informed the plaintiff by letter dated May 4, 1931, that it was in receipt of a request for a change of beneficiary. The government as a party to the contract apparently waived the provision that the request for a change of beneficiary be accompanied by the policy, and indorsed the change thereon notwithstanding the claim made by the plaintiff. This was not done until March 10, 1932, after correspondence with the plaintiff and his attorney.

In a letter bearing date of February 9, 1932 (Plaintiff's Exhibit 1), plaintiff's attorney, Alexander H. Lewis, now deceased, was notified of the determination of the Bureau in the following language: "This claim has received careful consideration and the administrator of Veterans affairs has now rendered a decision to the effect that the change of beneficiary of this insurance policy executed by the insured on April 8, 1931, in favor of Maria Connors Leonard, aunt, Agnes C. MacLean, sister, and Daniel J. Murphy, father, one third to each is valid, and must be given effect. However, in view of the fact that it appears that your client Daniel J. Murphy intends to file suit in this case payment of the proceeds of the insurance policy in accordance with the change of beneficiary will be held in abeyance for a period of thirty days from the date of this letter in order to give him a reasonable opportunity in which to file suit. If at the expiration of that time suit has not been filed and this office notified to that effect steps will be taken to make payment under the policy to the last designated beneficiary. This letter may be considered as evidence of a disagreement within the meaning of section 19 of the World War Veterans' Act, as amended (U. S. C. Ann., title 38, § 445)."

Apparently soon after this ruling, indorsement of the change was made upon the policy, but in the meantime suit had been entered February 13, 1932, and plaintiff claims that, the change in the beneficiary not having become effective if at all until after the suit was brought, the rights of the parties could not be changed by any action of the government.

The indorsement on the policy was made in pursuance of a decision already made before suit was entered or could be entered, waiving any technical irregularities in noncompliance with section 12 in the policy. This provision being inserted in the policy for the protection of the government in making payment under it and not for the protection of any named beneficiary having no vested interest therein, I hold that a change in beneficiary became effective as of the date the insured signed the written notice of change as provided in section 12.

A verdict may be entered in favor of Maria Connors Leonard, Agnes C. MacLean, and Daniel J. Murphy for one-third each of the face of the policy, $5,000.